**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**AMIGOS BRAVOS, COMMON GROUND
UNITED, NATURAL RESOURCES DEFENSE
COUNCIL, OIL AND GAS ACCOUNTABILITY
PROJECT, a project of Earthworks, SAN JUAN
CITIZENS ALLIANCE, and SOUTHWEST
ENVIRONMENTAL CENTER,**

> **Plaintiffs,**

**v.**                                                                          **No. CIV 09-0037 RB/LFG**

**UNITED STATES BUREAU OF LAND
MANAGEMENT, LINDA S.C. RUNDELL,
in her official capacity as State Director of the
Bureau of Land Management, and KEN
SALAZAR, in his official capacity as Secretary
of the United States Department of the Interior,**

> **Defendants,**

**INDEPENDENT PETROLEUM
ASSOCIATION OF NEW MEXICO,**

> **Intervenor/Defendant,**

<u>**consolidated with**</u>

**WILDEARTH GUARDIANS, DINÉ CARE,
and CARSON FOREST WATCH,**

> **Plaintiffs,**

**v.**                                                                          **No. CIV 09-0414 RB/LFG**

**UNITED STATES BUREAU OF LAND
MANAGEMENT and UNITED STATES
FOREST SERVICE,**

> **Defendants,**

**INDEPENDENT PETROLEUM
ASSOCIATION OF NEW MEXICO,**
> **Intervenor/Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the Federal Defendants' Motion to Dismiss (Doc. 24), filed on May 26, 2009, in Case Number CIV 09-0037 RB/LFG ("Amigos Bravos"), and Federal Defendants' Motion to Dismiss (Doc. 26), filed on July 10, 2009, in Case Number CIV 09-0414 RB/LFG ("WildEarth").[1]   Jurisdiction arises under 28 U.S.C. § 1331.   Having considered the submissions and arguments of counsel, relevant law, and being otherwise fully advised, I find that the motion in Amigos Bravos should be granted in part and denied in part and the motion in WildEarth should be denied.

## I.      Background.

In Amigos Bravos, Plaintiffs consist of six citizen groups (collectively "Amigos Bravos") challenging the actions of the United States Bureau of Land Management ("BLM") in approving two quarterly oil and gas lease sales on April 16, 2008 ("April lease sale") and July 16, 2008 ("July lease sale").   Amigos Bravos sues under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, alleging that BLM failed to consider the effects of global warming due to greenhouse gas ("GHG") emissions arising from oil and gas production on the lease parcels, in violation of the Federal Land Policy and Management ("FLPMA"), 43 U.S.C. §§ 1701 *et seq.*, the Mineral Lands Leasing Act ("MLLA"), 30 U.S.C. §§ 181 *et seq.*, the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, and the United States Department of the Interior's ("DOI's") Secretarial Order 3226.

More specifically, in its First Amended Complaint for Declaratory and Injunctive Relief, Amigos Bravos asserts the following claims (A) BLM failed to provide for public involvement and

---

[1] The Amigos Bravos case and the WildEarth case were consolidated on September 10, 2009.

failed to provide the public with sufficient environmental information in violation of NEPA, (B)

BLM failed to take a hard look at the impacts to the environment in violation of NEPA, (C) BLM

failed to consider reasonable alternatives in violation of NEPA, (D) BLM failed to prepare

environmental impact statements ("EISs") in violation of NEPA, (E) BLM failed to prepare

supplemental NEPA analyses for its resource management plans ("RMPs") in violation of NEPA,

(F) BLM failed to prevent unnecessary or undue degradation and failed to minimize the impacts to

the environment in violation of FLPMA, (G) BLM failed to prevent waste of oil and gas resources

in violation of FLPMA and the MLLA, and (H) BLM failed to provide for compliance with New

Mexico GHG goals and prohibitions against the waste of oil and gas resources in violation of

FLPMA.  (Doc. 21.)

In WildEarth, Plaintiffs consist of three citizen groups (collectively "WildEarth"), different

from the Amigos Bravos groups, challenging the actions of BLM and the United States Forest

Service ("USFS") in connection with the April lease sale and the July lease sale, as well as the

October 22, 2008 quarterly oil and gas lease sale ("October lease sale").  WildEarth sues under the

APA, alleging that BLM and USFS failed to consider the effects of air pollution due to ozone arising

from oil and gas production on the lease parcels, in violation of FLPMA and NEPA, and BLM failed

to consider a revised National Ambient Air Quality Standard ("NAAQS") for ozone published in

2008 by the United States Environmental Protection Agency ("EPA"), and USFS violated the

National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600 *et seq*., in issuing a Record of

Decision ("ROD") opening 5,000 previously unleased acres within the Jicarilla Ranger District of

the Carson National Forest to oil and gas leasing.

More specifically, in its First Amended Complaint for Declaratory and Injunctive Relief,

WildEarth asserts the following claims (1) the environmental assessments ("EAs") and findings of

no significant impact ("FONSIs") prepared by BLM are legally inadequate in that they failed to fully analyze direct, indirect and cumulative impacts in violation of NEPA, (2) the EAs and FONSIs prepared by BLM are legally inadequate in that they failed to analyze a reasonable range of alternatives in violation of NEPA, (3) BLM failed to prepare EISs in violation of NEPA, (4) BLM failed to involve the public in the NEPA process in violation of NEPA, (5) BLM failed to comply with air quality standards for ozone in violation of FLPMA, (6) the EIS prepared by the USFS was legally inadequate in that it failed to analyze a reasonable range of alternatives in violation of NEPA, (7) the EIS prepared by the USFS was legally inadequate in that it failed to adequately analyze air quality impacts in violation of NEPA, (8) the ROD issued by the USFS is inconsistent with the Carson Forest Plan in that it failed to ensure protection of visual conditions in Class I wilderness areas in violation of NFMA, and (9) the ROD issued by the USFS is inconsistent with the Carson Forest Plan in that it failed to ensure complaint with ozone NAAQS in violation of NFMA.  (Doc. 40.)

Amigos Bravos and WildEarth (collectively "Plaintiffs") seek declaratory and injunctive relief.

Federal Defendants (hereinafter "Defendants") move to dismiss based on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  More specifically, Defendants contend that (A) Plaintiffs improperly initiated these consolidated actions with complaints, (B) Plaintiffs have not challenged a final agency action as required by the APA, (C) Plaintiffs' claims are time-barred by the statute of limitations contained in the MLLA, (D) Amigos Bravos's claim that BLM violated NEPA by failing to supplement the EISs for its RMPs is foreclosed by *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55 (2004), and (E) Amigos Bravos's claim that BLM violated FLPMA by failing to comply with New Mexico "goals and prohibitions" is not cognizable.

**II.     Standards.**

Both Rule 12(b)(1) and Rule 12(b)(6) apply to cases brought under the APA. *Kane County v. Salazar*, 562 F.3d 1077, 1086 (10th Cir. 2009). Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Motions filed pursuant to Rule 12(b)(1) generally entail either facial attacks on the complaint or factual attacks on the accuracy of its allegations. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). For a facial challenge, the district court must accept the allegations of the complaint as true. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). For a factual challenge, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based. *Id.* Because federal courts are courts of limited jurisdiction, the law imposes a presumption against federal subject matter jurisdiction. *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999). Plaintiffs bear the burden of establishing the existence of federal jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss for failure to state a claim. Such motions "ask whether there is 'plausibility in [the] complaint.' " *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1970 (2007)). In order to survive a Rule 12(b)(6) motion, the complaint "does not need detailed factual allegations," *Twombly*, 127 S.Ct. at 1964, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.,* 127 S. Ct. at 1965. The question is whether, if the allegations are true, it is plausible, and not merely possible, that the plaintiff is entitled to relief under the relevant law. *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

**III.     Discussion.**

**A.     Plaintiffs properly sought judicial review.**

Pursuant to the APA, this court must review agency action to determine solely whether such action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. 706(2)(A).  This standard is narrow and "[t]he court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  While the reviewing court must undertake a "thorough, probing, in-depth review," it is empowered to determine only whether "the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.*, 401 U.S. at 415-16; *see also Marsh v. Or. Natural Resources Council*, 490 U.S. 360, 378 (1989).  "In addition to requiring a reasoned basis for agency action, the 'arbitrary or capricious' standard requires an agency's action to be supported by the facts in the record." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1575 (10th Cir. 1994).

Consistent with this standard of review, claims under the APA are treated as appeals of agency action. *See Olenhouse*, 42 F.3d at 1579-80 ("[r]eviews of agency action in the district courts must be processed as appeals").  Although Plaintiffs captioned their initial filings as "complaints" and "amended complaints" rather than "petitions for review of agency action," such nomenclature does not mandate dismissal.  Notably, the Tenth Circuit has implicitly recognized that APA claims are properly initiated by a complaint. *See Kane County*, 562 F.3d at 1086 ("nothing in *Olenhouse* (or, for that matter, other controlling case law or the APA itself) precludes an APA-based complaint from being summarily dismissed pursuant to Federal Rule of Civil Procedure 12(b)").  Although they will be processed in accordance with *Olenhouse*, these consolidated actions should not be

dismissed because they were initiated with complaints.

**B.      Plaintiffs challenge final agency actions.**

Defendants claim that Plaintiffs have not challenged a final agency action within the

meaning of the APA.  The APA authorizes suit by "[a] person suffering legal wrong because of

agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant

statute." 5 U.S.C. § 702.  Section 704 of the APA provides for judicial review of "final agency

action" "for which there is no other adequate remedy in a court." 5 U.S.C. § 704.  The APA defines

agency action as "the whole or a part of an agency rule, order, license, sanction, relief, or the

equivalent or denial thereof, or failure to act." 5 U.S.C.§ 551(13).

The Supreme Court has stated "two conditions must be satisfied for agency action to be

'final' ".  *Bennett v. Spear*, 520 U.S. 154, 177 (1997).   "First, the action must mark the

consummation of the agency's decisionmaking process . . . it must not be of a merely tentative or

interlocutory nature." *Id.*, 520 U.S. at 177-78 (quotation omitted).  Second, "the action must be one

by which rights or obligations have been determined, or from which legal consequences will flow."

*Id.*, 520 U.S. at 178 (quotation omitted).  The "bite" in the phrase "final action" comes from the

word "final." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 479 (2001).  The term means a "final

determination" in a case by an agency; that is, whether the agency "rendered its last word on the

matter." *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 586 (1980).  Only after the final action is

complete may a court review the agency's action. *See* 5 U.S.C. § 704; *Nat'l Ass'n of Home Builders

v. Defenders of Wildlife*, 551 U.S. 644, 659 (2007).

Broad programmatic attacks against agencies are not permissible under the APA. *Lujan v.

Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990).  "Under the terms of the APA, [a plaintiff] must

direct its attack against some particular 'agency action' that causes it harm." *Id*.   Systemic

improvement and sweeping actions are the purview of the other branches of government; such activities are not properly adjudicated by the courts under the APA. *Id.*; *see also Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004).  However, the ban on generalized attacks does not prevent plaintiffs from bringing a handful of specialized challenges to specific "final agency actions" that, if successful, would broadly impact the agency's program. *See Lujan*, 497 U.S. at 890-91.  As a practical matter, the analysis must specifically identify each claim and determine whether it is based on a final agency action.

In its First Amended Complaint for Declaratory and Injunctive Relief, Amigos Bravos challenges the April lease sale and July lease sale and the environmental assessments (EAs) prepared for these lease sales.  (Doc. 21.)  In response to Defendants' motion to dismiss, Amigos Bravos states that it challenges the denials by the BLM State Director of Amigos Bravos's protests of the April lease sale and the July lease sale ("protest decisions").  (Doc. 35.)  In the Reply to Defendants' Response to Plaintiffs' Notice of Supplemental Authority, Amigos Bravos states that "the target is clear: BLM's April 16, 2008 and July 16, 2008 oil and gas lease sale processes as consummated by the agency's July 11th and October 31st protest decision and all of the leases located within New Mexico issued as a consequence of those protest decisions."  (Doc. 68.)

In their First Amended Complaint for Declaratory and Injunctive Relief, (Doc. 40), and their Notice of Filing Amended Complaint, (Doc. 41), WildEarth states that it challenges (1) the EAs and findings of no significant impact (FONSIs) associated with the April lease sale, July lease sale, and October lease sale, (2) the approval of the three lease sales based on legally inadequate EAs and FONSIs associated with each lease sale, (3) the denials of the protest decisions regarding the three lease sales, and (4) the issuance of leases awarded at the three lease sales.  (Docs. 40 and 41.)

In response to the Court's request for each group of Plaintiffs to specify each challenged

8

agency action, Amigos Bravos explains that it challenges: (1) BLM's July 11, 2008 protest decision, which dismissed Amigos Bravos's March 31, 2008 protest of the April lease sale; and (2) BLM's October 31, 2008 protest decision, which dismissed Amigos Bravos's June 30, 2008 protest of the July lease sale.  (Doc. 71.)  Amigos Bravos elaborates that it also challenged the EAs and FONSIs that preceded these decisions.

WildEarth explains that it challenges: (1) BLM's decisions to proceed with the April lease sale, the July lease sale, and the October lease sale on the basis of inadequate EAs and FONSIs; (2) the July 11, 2008 protest decision on the April lease sale, the October 24, 2008 protest decision on the July 2008 lease sale, and the December 10, 2008 protest decision on the October lease sale; and (3) BLM's issuance of leases on eighteen parcels from the April lease sale (NM-200804-059 through NM-200804-076), nine parcels from the July lease sale (NM-200807-034 through NM-200807-042), and seven parcels from the October lease sale (NM-200810-025 through NM-200810-031).  (Doc. 70.)

Now that the record is clear as to the specific agency actions challenged by Plaintiffs, the analysis turns to whether each such agency action was final.  Plaintiffs' challenges center on the protest decisions.  Applicable regulations indicate that a decision by BLM to hold a lease sale is effective immediately and may not be suspended due to an appeal.  *See* 43 C.F.R. §§ 4.21(a) and 3120.1-3.  However, BLM may suspend the offering of a specific parcel while considering a protest or appeal.  43 C.F.R. § 3120.1-3.  The existing record indicates that Plaintiffs did not appeal the protest decisions.  Under such circumstances, the plain meaning of the regulations indicate that the protest decisions were final agency actions.

Notably, the Tenth Circuit has indicated, in dicta, that BLM's actions underlying lease sales may qualify as final agency actions.  *See Chihuahuan Grasslands Alliance v. Kempthorne*, 545 F.3d

884, 892 (10th Cir. 2008).  This concept is reinforced by *Nat'l Parks & Conservation Ass'n v. Bureau of Land Mgmt.*, 586 F.3d 735 (9th Cir. 2009), wherein the Ninth Circuit held that, where no petition for stay pending administrative appeal was submitted, each denial of an administrative protest becomes effective and final following the expiration of the appeal period.  *See id.*, 586 F.3d at 741.  The plain meaning of the regulations, Tenth Circuit dicta, and Ninth Circuit case law all support the notion that each protest decision constitutes a final agency action.  In that there is no indication that Plaintiffs appealed any of the protest decisions, such decisions were effective and final agency action as of the date they were issued.

WildEarth also relies on BLM's three decisions to proceed with the subject lease sales on the basis of inadequate EAs and FONSIs.  Courts have held that administrative decisions similar to the EAs and FONSIs in this case are final in nature.  *See e.g. Bennett*, 520 U.S. at 178 (holding a biological opinion issued by United States Fish and Wildlife Service under Endangered Species Act ("ESA") was a "final agency action"); *Utah Envlt. Congress v. Russell*, 518 F.3d 817, 823-24 (10th Cir. 2008) (reviewing FONSI as a final decision under the APA); *see also Wilderness Soc'y v. Wisely*, 524 F.Supp.2d 1285, 1299 (D. Colo. 2007) (holding that an EA/FONSI was a final agency action for purposes of the APA and ESA).  In this case, the EAs and FONSIs allowed BLM to proceed with the lease sales, and triggered the administrative protest process.  *See* 43 C.F.R. § 3120.1-3.  As such, the EAs and FONSIs would constitute final agency actions within the meaning of the APA.

In addition to challenging the underlying decisions related to issuance of oil and gas leases, WildEarth also challenges the issuance of specific leases. (Doc. 71)  Defendants do not dispute that the issuance of the leases qualifies as final agency action.  WildEarth has specifically identified the leases that are the subject of its challenge, which is important for the determination of whether an

action challenging leases is moot. *See Chihuahuan Grasslands Alliance*, 545 F.3d at 892 (finding

the matter moot after leases had lapsed). Plaintiffs have challenged final agency actions within the

meaning of the APA.

**C.    The MLLA statute of limitations.**

  **1.  The MLLA statute of limitations applies only to the MLLA claim.**

  Defendants contend Plaintiffs' claims are time-barred because the complaints were not filed

within the MLLA's 90-day statute of limitations found at 30 U.S.C. § 226-2  ("Section 226-2").

Section 226-2 reads: "No action contesting a decision of the Secretary involving any oil and gas

lease shall be maintained unless such action is commenced or taken within ninety days after the final

decision of the Secretary relating to such matter."  30 U.S.C. § 226-2.

  Defendants' argument is foreclosed by binding Tenth Circuit precedent.  In *Park County Res.*

*Council, Inc. v. U.S. Dep't of Agric.*, 817 F.2d 609 (10th Cir. 1987), *overruled on other grounds by*

*Vill. of Los Ranchos de Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992), the Tenth Circuit

narrowly construed Section 226-2 and limited its application to actions arising under the MLLA.

The Tenth Circuit stated that Section 226-2 "applies only to actions contesting either the lease

issuance or substantive decisions relating to the lease itself. It applies in cases challenging lack of

compliance with all the intricate requirements of . . . the [MLLA] . . .."  For this reason, the Tenth

Circuit held that Section 226-2 does not apply to challenges to the agency's decision-making

regarding NEPA's separate procedural requirements.  *See Park County*, 817 F.2d at 616.

  Following *Park County*, the Tenth Circuit stated that Section 226-2 "does not apply to

actions under the FLPMA, but rather to the validity of lease permits issued pursuant to the

[MLLA]." *Aulston v. United States*, 915 F.2d 584, 588 n. 4 (10th Cir. 1990).  Based on the

reasoning of *Park County*, the Tenth Circuit would hold that Section 226-2 is inapplicable to NFMA

and APA claims, as well as to NEPA and FLPMA claims.  *See Park County*, 817 F.2d at 616

(holding that Section 226-2 only applies to actions contesting either the lease issuance or substantive

decisions relating to the lease itself).  Under *Park County*, Section 226-2 applies only to MLLA

claims asserted herein.

Defendants assert that *Park County* was wrongly decided and should be overturned.  (Doc.

24 at 19.)  The Court recognizes that *Park County* is no longer good law on at least two points.  *Park*

*County* addressed not only the applicability of Section 226-2 to NEPA claims, but also the statute

of limitations and the standard of review for such claims.  *See Park County*, 817 F.2d at 616-618.

In *Vill. of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992), the Tenth Circuit

overruled *Park County* on the standard of review issue, recognizing that the Supreme Court in

*Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 385 (1989) held that the APA's "arbitrary and

capricious" standard of review applies to NEPA claims.  *Id.*, 956 F.2d at 973.  In *Chemical Weapons*

*Working Group, Inc. v. U .S. Dep't of the Army*, 111 F.3d 1485, 1494-95 (10th Cir. 1997), the Tenth

Circuit recognized that NEPA claims are subject to the general six-year limitations of 28 U.S.C. §

2401(a), *Chemical Weapons*, 111 F.3d at 1494-95, thereby abrogating *Park County's* discussion of

laches in reference to NEPA claims.  *Park County*, 817 F.2d at 618-19.  While *Park County* has been

overruled on other grounds, the subsequent cases do not undercut *Park County's* holding that

Section 226-2 does not apply to NEPA claims.

In support of their stance that *Park County* was wrongly decided, Defendants look to the

plain language of the MLLA and its legislative history.  (Doc. 24 at 20-22.)  However, this

contention is undercut by the language of *Park County*, wherein the Tenth Circuit quoted the plain

language of the statute.  *Park County*, 817 F.2d at 616.  Additionally, the Tenth Circuit quoted the

legislative history of the MLLA immediately following its holding that Section 226-2 "applies only

to actions contesting either the lease issuance or substantive decisions relating to the lease itself."

*Park County*, 817 F.2d at 616.  With respect to the legislative history, the Tenth Circuit stated

> [The MLLA] applies in cases challenging lack of compliance with all the intricate requirements of Subchapter IV of the MLLA which deals with oil and gas leasing. The present [NEPA] action is not one "contesting decisions of the Secretary of the Interior *under the Mineral Leasing Act.*" H.R.Rep. No. 2135, 86th Cong., 2d Sess. 14 (1960), U.S.Code Cong. & Admin. News 1960, pp. 3313, 3337 (emphasis added [by Tenth Circuit]).

Clearly, the Tenth Circuit in *Park County* relied on the plain meaning of the statute's legislative history in reaching its holding that Section 226-2 applies only to MLLA claims.  While Defendants may disagree with the Tenth Circuit's reading of the statute and interpretation of the legislative history, it is not the province of this Court to second-guess Tenth Circuit precedent.

Defendants also rely on *Turtle Island Restoration Network v. U. S. Dep't of Commerce*, 438 F.3d 937, 947 n.9 (9th Cir. 2006), to support their argument that *Park County* was wrongly decided. (Doc. 24 at15 n.5.)  The *Turtle Island* case addressed the judicial review provision of the Magnuson-Stevens Fishery Conservation Act of 1976, 16 U.S.C. § 1855(f), on claims brought pursuant to NEPA, the Migratory Bird Treaty Act, and the Endangered Species Act under the APA concerning the reopening of a swordfish fishery by the National Marine Fisheries Service.  *Turtle Island*, 438 F.3d at 939.  The Ninth Circuit emphasized that the Magnuson Act's high level of specificity indicated that other, more general statutes of limitations would not supplant Section 1855(f). Indeed, *Turtle Island* emphasized that "Section 1855(f) applies only to a very specific class of claims - those that clearly challenge regulations promulgated under the Magnuson Act." *Turtle Island*, 438 F.3d at 948.  Notably, this action is not brought under the Magnuson Act so the reasoning of *Turtle Island* is inapplicable herein.  Moreover, Ninth Circuit authority is not binding in the District of New Mexico, particularly where, as here, there is controlling authority in the Tenth Circuit.

13

The Tenth Circuit has not overruled, abrogated, or otherwise undermined *Park County's*

holding that 30 U.S.C. § 226-2 does not apply to NEPA claims. *See S. Utah Wilderness Alliance*

*v. Bureau of Land Mgmt.*, 2008 WL 5245492, at *4-6 (D. Utah Dec. 16, 2008) (discussing *Turtle*

*Island* and applying *Park County*); *Dine Citizens Against Ruining Our Environment v. Klein*, ___

F.Supp. 3d ____, 2009 WL 3162065, *10 (D. Colo. Sep 30, 2009) (observing district court is "not

at liberty to ignore binding Tenth Circuit precedent [and] [t]he *Park County* decision governs").

Simply put, this Court is bound by *Park County*.  Defendants may raise their arguments concerning

the relative merits of *Park County* on appeal.

> **2.      Amigos Bravos's MLLA claim relating to the July lease sale and October 31,
> 2008 protest decision was timely filed; Amigos Bravos's MLLA claim relating
> to the April lease sale and July 11, 2008 protest decision was not timely filed.**

*Park County* held that Section 226-2 applies only to actions contesting either the lease

issuance or substantive decisions relating to the leases themselves under the MLLA. *Park County*,

817 F.2d at 616.  WildEarth does not reference the MLLA in its pleadings.  Therefore, Section 226-2

does not apply to WildEarth's claims.  Amigos Bravos does, however, reference the MLLA with

respect to one of its claims.

In its seventh cause of action (Section G of the First Amended Complaint), Amigos Bravos

alleges, inter alia, that BLM failed to comply with its duties under the MLLA in the context of one

of its APA claims.[2]  To the extent that Amigos Bravos contests either the lease issuances or

___

[2] More specifically, Amigos Bravos alleges that the MLLA, "pursuant to its implementing regulations,
requires BLM and oil and gas operators to protect natural resources and environmental quality, minimize waste, and
minimize the adverse effect on the ultimate recovery of other mineral resources." (Doc. 21 ¶ 179.)  In the same
section, Amigos Bravos additionally alleges that "BLM's actions are arbitrary, capricious, an abuse of discretion, in
excess of statutory authority and limitations, short of statutory right and not in accordance with the law and
procedures required by law, because BLM failed to comply with FLPMA and the [MLLA]" and cites to the APA.
(Doc. 21 ¶ 183.)  While not argued by Plaintiffs, the Court questions whether this is actually a challenge to the lease
issuances or substantive decisions relating thereto as contemplated by *Park County.*

substantive decisions relating to the leases themselves under the MLLA, Section 226-2 would apply

to such claim. Amigos Bravos filed suit on January 14, 2009, which was within ninety days of the

October 31, 2008 protest decision relating to the July lease sale. Thus, Section 226-2 would not bar

any MLLA claim that relates to the July lease sale and the October 31, 2008 protest decision.

The protest decision on the April lease sale was issued on July 11, 2008. The latest date of

a lease issued on the April lease sale was September 8, 2008. Amigos Bravos filed its complaint

on January 14, 2009, which was more than ninety days after September 8, 2008. To the extent that

Amigos Bravos contests either the lease issuances or substantive decisions relating to the leases

themselves under the MLLA, such a claim with respect to the April lease sale and July 11, 2008

protest decision would be subject to Section 226-2.

### 3.   Equitable tolling is inapplicable.

Amigos Bravos contends that the doctrine of equitable tolling should apply. In *Irwin v.*

*Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990) the Court held that the same rebuttable

presumption of equitable tolling that applies to private litigants applies to lawsuits in which the

United States is a defendant. *Irwin*, 498 U.S. at 95-96. Applying the rebuttable presumption rule

to Title VII of the Civil Rights Act of 1964, the Court found the doctrine of equitable tolling to be

consistent with the congressional intent behind Title VII. *Id.*

Subsequently, the Court elaborated that equitable tolling does not apply in every case in

which the United States is a defendant. *See United States v. Beggerly*, 524 U.S. 38, 47-48 (1998);

*United States v. Brockamp*, 519 U.S. 347, 354 (1997). In *Beggerly*, the Court held that the Quiet

Title Act ("QTA") was not subject to equitable tolling because the QTA already allows for equitable

tolling in that the statute of limitations does not begin to run until the plaintiff "knew or should have

known of the claim of the United States" and the QTA's twelve-year statute of limitations is

unusually generous.  *Beggerly*, 524 U.S. 38, 48-49 (*citing* 28 U.S.C. § 2409a(g)).  In *Brockamp*, the

Court held that equitable tolling was not available in tax refund suits against the United States

because the language of the relevant section "sets forth its time limitations in unusually emphatic

form." *Brockamp*, 519 U.S. at 350.

 These cases indicate that equitable tolling is permissible only after a court examines the

language and purposes of the statute of limitations and identifies congressional intent to equitably

toll the limitations period.  *Beggerly*, 524 U.S. at 47-48; *Brockamp*, 519 U.S. at 350-54.  Notably,

with respect to the MLLA, the Tenth Circuit has stated that Section 226-2 is "jurisdictional and

cannot be ignored."  *Geosearch, Inc. v. Hodel*, 801 F.2d 1250, 1252 (10th Cir. 1986) (per curiam)

(*implied overruling on other grounds recognized by Reppy v. Dep't of Interior*, 874 F.2d 728, 730

(10th Cir. 1989)).  The Tenth Circuit indicated in *Geosearch* that Section 226-2 is jurisdictional and

therefore not subject to equitable tolling.

 Additionally, even if equitable tolling were applicable, Amigos Bravos has not shown the

doctrine should be applied herein.  The Tenth Circuit has noted that application of the doctrine is

limited to "rare and exceptional circumstances." *Garcia v. Shanks*, 351 F.3d 468, 473 n. 2 (10th Cir.

2003).  Equitable tolling is only available where a plaintiff "diligently pursues [its] claims and

demonstrates that the failure to timely file was caused by extraordinary circumstances beyond [its]

control." *Id.*  In *Irwin*, the Court held that the doctrine applies (1) where a plaintiff has "actively

pursued his judicial remedies by a filing a defective pleading during the statutory period"; or (2)

where a plaintiff was "induced or tricked by his adversary's misconduct into allowing the filing

deadline to pass." *Id.*, 498 U.S. at 96.

 As grounds for its assertion that equitable tolling should apply, Amigos Bravos relies on a

Freedom of Information Act ("FOIA") request for records pertaining to the July 11, 2008 protest

decision submitted by a group called Rocky Mountain Clean Air Action on August 14, 2008.[3]

(Amigos Bravos Ex. C, Doc. 35-4.)  According to Amigos Bravos, BLM has not fully responded to

the FOIA request, and due to "BLM's refusal to complete its NEPA analyses prior to [Amigos

Bravos's] deadline to submit its protest of the lease sale, BLM's related failure to vet its NEPA

documents through public review and comment, and BLM's delay in producing records - the Court

should apply equitable tolling principles . . .."  (Doc. 35 at 16.)  These factors do not constitute

recognized grounds for application of equitable tolling.  The existence of the FOIA request

submitted by an unrelated entity does not equate to active pursuit of judicial remedies during the

ninety-day period.  Indeed, Amigos Bravos maintains that the agency has yet to produce the

requested information.  In other words, Amigos Bravos has not explained how the lack of the

information prevented it from filing suit within the ninety days as opposed to January 14, 2009.

Assuming *arguendo* that BLM wrongfully withheld the information, such conduct would not induce

Amigos Bravos to allow the filing deadline to pass.  Even if equitable tolling applied to Section 226-

2, Amigos Bravos would not be entitled to application of the doctrine with respect to its MLLA

claim relating to the April lease sale and the July 11, 2008 protest decision.

**D.      Amigos Bravos's claim that BLM violated NEPA by failing to supplement the EISs for
          its RMPs is not foreclosed by *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55 (2004).**

In its fifth cause of action (Section E of its First Amended Complaint), Amigos Bravos

alleges that BLM violated NEPA because it failed to supplement the RMP-level NEPA analyses.

(Doc. 21 ¶ 159.)  Amigos Bravos contends that supplemental NEPA analyses were necessary

because the RMP-level NEPA analyses do not address global warming, GHG emissions from oil

---

[3] Amigos Bravos states that Rocky Mountain Clean Air Action subsequently merged with WildEarth and submitted the FOIA request with the intent to inform the public.  (Doc. 35 at 15 n. 8.)

and gas operations, and do not quantify or consider measures to improve efficiency and reduce waste from oil and gas production.  (*Id.*)

In *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55 (2004), the Court held that agency action was completed when a RMP was approved and there was no ongoing federal action.  *Id.*, 542 U.S. at 72-73.  In *Norton*, the plaintiff (SUWA) sought declaratory and injunctive relief for BLM's failure to act to protect public lands from environmental damage caused by off-road vehicles ("ORVs").  *Id.*, 542 U.S. at 61.  SUWA contended, in pertinent part, that BLM failed to fulfill its obligation under NEPA to take a "hard look" at whether to supplement its EIS in order to take increased ORV use into account.  *Id.*

The Court disagreed and held that supplementation is only necessary if there remains major federal action to occur.  *Norton*, 542 U.S. at 73 (quotation omitted).  Although the approval of an RMP is a major federal action requiring an EIS, that action is completed when the plan is approved.  *Id.*  Accordingly, because BLM's approval of its land use plan was the "action" that required the EIS, and since that plan was already approved, the Court found that there was no ongoing major federal action that could require supplementation.  *Id.*

In *Greater Yellowstone Coalition v. Tidwell*, 572 F.3d 1115 (10th Cir. 2009), the plaintiff claimed that changed circumstances, which consisted of the discovery of the threat of brucellosis and chronic wasting disease at elk feedgrounds, required USFS to undertake a supplemental NEPA analysis in order to addresses these changes.  *Greater Yellowstone Coalition*, 572 F.3d at 1123.  The Tenth Circuit applied *Norton* and concluded that the decision of USFS not to undertake an EA comported with the APA.  *See id.,* 572 F.3d at 1123.  The Tenth Circuit underscored that the relevant NEPA provisions apply only to federal action and USFS had remained largely uninvolved in the feedground operations since issuing the permit.  *Id.*  There was no need to supplement the NEPA

18

documents because there was no ongoing federal action at the feedgrounds. *Id.*

Here, in contrast, BLM has engaged in the ongoing federal actions of authorizing the lease

sales and issuing oil and gas leases. These actions may qualify as ongoing federal action. *See S.*

*Utah Wilderness Alliance v. Norton*, 457 F.Supp.2d 1253, 1265 (D. Utah 2006). The factual

allegations are "enough to raise a right to relief above the speculative level" for purposes of Rule

12(b)(6). *Twombly*, 127 S.Ct. at 1965. Therefore, Amigos Bravos's fifth cause of action should not

be dismissed under Rule 12(b)(6).

**E.      Amigos Bravos's claim that BLM violated FLPMA by failing to comply with New Mexico "goals and prohibitions" is not cognizable.**

In its eighth cause of action (Section H of its First Amended Complaint), Amigos Bravos

alleges that BLM failed to ensure compliance with New Mexico laws prohibiting the waste of oil

and gas and calling for reductions of methane and carbon dioxide emissions in violation of FLPMA,

43 U.S.C. § 1712(c)(8) and (c)(9) and 43 C.F.R. § 2920.7 (b)(3). (Doc. 21 ¶¶ 185-188.)

The cited section of FLPMA states that land use plans, or in this case RMPs, must "provide

for compliance with applicable State and Federal air, water, noise, and other pollution standards or

implementation plans." 43 U.S.C. § 1712(c). The cited regulation, 43 C.F.R. § 2920.7 (b)(3),

provides that "each land use authorization shall contain terms and conditions which shall . . . require

compliance with air and water quality standards established pursuant to applicable Federal or State

law . . .." *Id.* Amigos Bravos's First Amended Complaint does not specifically challenge a land use

plan, RMP, or a provision of a lease. In order to survive a Rule 12(b)(6) motion, plaintiffs must

allege sufficient factual allegations to raise the "right to relief above the speculative level."

*Twombly*, 127 S.Ct. at 1965. The question is whether, if the allegations are true, it is plausible, and

not merely possible, that the plaintiff is entitled to relief under the relevant law. *Robbins v. Okla.*,

519 F.3d at 1247.  Amigos Bravos's eighth cause of action does not meet this standard because it

does not allege sufficient facts to state a plausible claim under the cited law.  Accordingly, Amigos

Bravos's eighth cause of action should be dismissed pursuant to Rule 12(b)(6).

**THEREFORE,**

     **IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 24), filed on May 26, 2009,

in Case Number CIV 09-0037 RB/LFG, is **GRANTED** as to Amigos Bravos's MLLA claim relating

to the April lease sale and the July 11, 2008 protest decision and Amigos Bravos's eighth cause of

action (Section H of its First Amended Complaint) and otherwise **DENIED.**

     **IT IS FURTHER ORDERED** that and Defendants' Motion to Dismiss (Doc. 26), filed on

July 10, 2009, in Case Number CIV 09-0414 RB/LFG, is **DENIED.**

_____

    **ROBERT C. BRACK**
    **UNITED STATES DISTRICT JUDGE**