**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

_____

AMIGOS BRAVOS, et al.,

        Plaintiffs,

  v.                              Case No. 6:09-cv-00037-RB-LFG

UNITED STATES BUREAU
OF LAND MANAGEMENT, et al.,

        Federal Defendants

INDEPENDENT PETROLEUM
ASSOCIATION OF NEW MEXICO,

        Intervenor-Defendant.

_____

*consolidated with*

WILDEARTH GUARDIANS, et al.

        Plaintiffs,

  v.                              Case No. 6:09-cv-00414-RB-LFG

UNITED STATES BUREAU
OF LAND MANAGEMENT and
UNITED STATES FOREST SERVICE,

        Federal Defendants,

INDEPENDENT PETROLEUM
ASSOCIATION OF NEW MEXICO,

        Intervenor-Defendant,

CONOCOPHILLIPS COMPANY,
WILLIAMS PRODUCTION COMPANY, LLC, and
ENERGEN RESOURCES CORP.

        Intervenor-Defendants.

_____

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiffs' Motion for Judicial Notice of 2011 Ozone Health Study. (Doc. 101.) Having considered the parties' submissions, the relevant case law, and otherwise being fully informed, the Court denies Plaintiffs' Motion for Judicial Notice. Judicial notice is inappropriate in the case at hand because the article is beyond the scope of judicial review under the Administrative Procedure Act (APA) and does not constitute the type of established scientific information that is appropriate for judicial notice.

**I.   BACKGROUND**

In this case (Case No. 6:09-cv-00414-RB-LFG), hereinafter the Ozone Complaint, Plaintiffs assert the United States Bureau of Land Management (BLM) and the United States Forest Service (Forest Service) violated federal law by authorizing additional oil and gas leasing in the San Juan Basin and the Jicarilla Ranger District of northwestern New Mexico without fully analyzing the direct, indirect, and cumulative impacts of oil and gas leasing and development on air quality and human health in the region. Plaintiffs request the Court take judicial notice of an article (ozone article) published by the *American Journal of Respiratory and Clinical Care Medicine* on January 7, 2011. (Doc. 101-1.) The ozone article indicates that concentrations of ozone of 0.06 parts per million (ppm) for 6.6 hours can have negative effects on human health. This is less than the current EPA standard of 0.075 ppm, and therefore, Plaintiffs assert that the article is relevant to the Court's determination of whether the BLM and Forest Service's analysis of the ozone threat was arbitrary and capricious. (Doc. 106 at 2.) Defendant-Intervenor Independent Petroleum Association of New Mexico (IPANM) and Federal Defendants counter that the Court should deny Plaintiffs' motion and not take judicial notice of the proffered study because (1) it is beyond the scope of judicial review under the APA; and (2) it does not represent the kind of settled scientific fact of

which the Court may take judicial notice under FED. R. EVID. 201. (Docs. 102 & 103.)

## II.   ANALYSIS

### A.   Scope of Review Under APA

Under the APA, the "focal point" of the Court's review of agency action "should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). This means that the Court's "review of agency action is normally restricted to the administrative record." *Citizens for Alternativew to Radioactive Dumping v. Dept. of Energy*, 485 F.3d 1091, 1096 (10th Cir. 2007). Only in "extremely limited circumstances, such as where the agency ignored relevant factors it should have considered," is the Court permitted to examine extra-record evidence. *Lee v. U.S. Air Force*, 354 F.3d 1229, 1242 (10th Cir. 2004). For instance, an examination of extra-record evidence may help the reviewing court determine "whether 'an EIS has neglected to mention a serious environmental consequence, failed adequately to discuss some reasonable alternative, or otherwise swept stubborn problems or serious criticism . . . under the rug.' " *Id*. (quoting *Or. Nat. Res. Council v. Lowe*, 109 F.3d 521, 526–27 (9th Cir. 1997)). In the case at hand, however, air quality was not an issue the agencies failed to discuss or swept under the rug. Both BLM and the Forest Service analyzed air quality and ozone levels in the region in considerable detail during the decision-making process.

BLM recognized that ozone levels in areas of the San Juan Basin had been near non-attainment in the past, but concluded that the approval of the lease sales would not have a significant impact on air quality. (APR 4221, 4231, 4242–43; JUL 3784–85, 3794; OCT 4181.)  BLM also recognized that the Environmental Protection Agency (EPA) recently revised downward the National Ambient Air Quality Standard (NAAQS) for ozone, and that ozone levels in the San Juan Basin were again close to exceeding the NAAQS; still, with ozone levels in the region declining,

BLM concluded that air quality was generally good, and that there was no indication approval of the three quarterly oil and gas lease sales would result in a violation of ambient air quality standards. (APR 4220, 4231, 4243; JUL 3784, 3794, 3803; OCT 4181, 4188–89, 4198.)  BLM's analysis, therefore, did not omit the issue of air quality or ignore a relevant factor of the problem that is addressed by the ozone article.

Additionally, the Forest Service considered, in detail, current ozone and ozone precursor emissions in the area from oil and gas wells and other sources (FS 26756–59), the emissions that would likely result from the proposed alternatives (FS26761–66), the region of influence for ozone and ozone dispersion (FS 26757–61, 26768), current federal and state air quality standards (FS 26755–56), and proposed mitigation measures (FS26772).  Ultimately, the agency concluded that "[a] review of the emissions estimated for gas production from the development of 751 new wells shows that the emissions of VOC and NOx . . . would contribute to an increase in emissions from current levels within the region." (FS 26771.)  Accordingly, the issue of air quality was not ignored by the Forest Service either.

Still, Plaintiffs assert that BLM and the Forest Service were required to consider the health impacts of ozone levels below the current standard of 0.075 ppm. (Doc. 106.)  This article, however, was not available to BLM or the Forest Service at the time of the agencies' analysis, and therefore, it does nothing to show that the agencies failed to consider an important aspect of the problem.  The agencies utilized the current ozone standard of 0.075 ppm in their analysis, which remains the health-based standard imposed by the EPA today.  The Court's review of the sufficiency of an agency's analysis must focus on the record and issues before the agency at the time of its decision, not controversies that developed after the fact. *See, e.g.*, *Greenpeace Action v. Franklin*, 14 F.3d 1324, 1334 (9th Cir. 1992) ("Greenpeace may not establish a scientific controversy post

hoc . . . when at the time of the Service's action, there existed no substantial dispute that should have alerted the Service to the concerns that Greenpeace now raises."). Plaintiffs' ozone article does nothing to demonstrate that the agencies' review of the record at the time of their decisions was arbitrary and capricious. Thus, the article is inadmissible as beyond the scope of judicial review under the APA.

### B. FED. R. EVID. 201

Plaintiffs additionally fail to establish that the study satisfies the requirements of FED. R. EVID. 201(b), which requires the following:

> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Because the judicial notice bypasses the safeguards that are present when evidence is admitted through the usual evidentiary process, the practice is generally utilized only for matters that are beyond reasonable controversy or dispute. FED. R. EVID. 201, advisory comm. note (b); *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997) ("taking of judicial notice of facts is, as a matter of evidence law, a highly limited process[;] [t]he reason for this caution is that the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in district court"). Accordingly, the type of facts of which a court will ordinarily take judicial notice are (a) established scientific facts, such as the boiling temperature of water, (b) geographical information, such as the capital of a state, or (c) historical data, such as the President of the United States in a given year. *See id*.

In the case at hand, Plaintiffs ask the Court to take judicial notice of a new scientific study regarding the health effects of ozone on an issue that is far from uncontroversial or beyond dispute.

The study itself indicates that it "reports *for the first time* that acute exposure to ozone for 6.6 hours at a level of 0.06 ppm (a level below the current Ambient Ozone Standard) causes significant effect on pulmonary function and airway inflammation in healthy young adults." (Doc. 101-1 at 2, emphasis added.) The study acknowledges that "two previous studies have investigated lung function at 0.06 ppm ozone using a 6.6 hour protocol; neither found statistically significant effects." (Doc. 101-1 at 13.) Furthermore, the EPA, the agency responsible for setting the NAAQS for ozone, has not acknowledged that concentrations of ozone below 0.075 ppm are dangerous to human health. The study may influence the EPA and policymakers to take additional step to investigate the health effects of ozone, and someday in the future, lower the NAAQS even further; however, at the moment, its conclusions are far from scientific fact. Consequently, the study does not constitute the type of established scientific information that is appropriate for judicial notice.

### III. CONCLUSION

This matter comes before the Court on Plaintiffs' Motion for Judicial Notice of 2011 Ozone Health Study. (Doc. 101.) Judicial notice is inappropriate in the case at hand because the article is beyond the proper scope of review under the APA and does not constitute the type of established scientific information that is appropriate for judicial notice.

**WHEREFORE**, the Court hereby **DENIES** Plaintiffs' Motion for Judicial Notice of 2011 Ozone Health Study. (Doc. 101.)

_____
**ROBERT BRACK**
**UNITED STATES DISTRICT JUDGE**